# WASHINGTON RAILWAY & ELECTRIC COMPANY *v.* LANAHAN.

---

TRIAL; DISCONTINUANCE; MISCONDUCT OF COUNSEL; OBJECTIONS AND EXCEPTIONS.

Where, in a personal injury action, the plaintiff's testimony and that of the defendant's physician were in conflict as to whether the physician had advised the plaintiff to seek rest in the country, she testifying he had done so, and he testifying that he had merely agreed with her own physician's suggestion to that effect; and upon plaintiff's counsel remarking in the presence of the jury that the company's physician had asked him to be discharged from further attendance on the trial, and not to call the other physician again, the counsel for the defendant moved for a dismissal of the action, which motion the court denied, but stated that he would instruct the jury to disregard the remarks of counsel, whereupon the defendant's counsel reserved an exception, it was *held* that there was no error justifying a reversal of a judgment for the plaintiff, and that if the statement of the court to the jury was not pointed or positive enough, counsel for the defendant should have asked for a more satisfactory instruction.

No. 2775    Submitted April 8, 1915.    Decided April 26, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for alleged personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for damages for personal injuries.

In attempting to enter one of defendant's cars from the platform of a suburban station, plaintiff, Loretta M. Lanahan, stepped upon a rotten plank which gave way, and her leg entered the hole above the knee. Her leg was wrenched causing her great pain continuously until the time of trial. Evidence of medical experts tended to show that there was an injury to the knee joint, namely chronic synovitis or thickening of the lubricating sac of the knee. No exception was taken to the introduction of evidence or to the charge of the court. The single exception is based upon the following:

The plaintiff in giving evidence had said that Dr. Glazebrook, defendant's physician, had suggested to her to take a trip to the country; that it might help her. That she went to the country on his advice.

Dr. Glazebrook, called by the defendant, testified as follows:

Q. Now, I will ask you to state whether or not you advised that the plaintiff go to the country?

A. I did not. I concurred in the advice given by Dr. Friedrich.

Q. Now, I wish you would state the circumstances of that.

A. After leaving the house, Dr. Friedrich and I walked to the sidewalk, and, as before, we discussed the case, and he turned to me and said, "Glazebrook, what do you think of it?" I said, "Dr. Friedrich, I could not find a single thing the matter with her. I have gone over it as thoroughly as I can." I said that she was walking on the side of her foot and turning

her foot in, and, of course, she walked with a limp. I said, "I cannot find anything the matter with her," and he said, "Neither can I, and I don't see why she does not go to work." He said, "I think the best thing is to send her to the country so that she will forget it, and I think that will be better for her than anything else." I said, "I agree with you." I agreed that that was the best thing for her.

On cross-examination, Dr. Glazebrook testified as follows:

Q. As I recollect it, you testified that on the second visit nothing was said about going to the country until you got on the sidewalk with Dr. Friedrich?

A. Yes, sir.

Q. And nothing whatever was said about that in the presence of Miss Lanahan?

A. I am not absolutely positive about that. If Miss Lanahan said that I mentioned it in the room, I shall not deny it, but I know at that time Dr. Friedrich said something about her going to the country, and I said that by all means I thought the change would do her good, and that she would forget all about it. I think it was just about in that way.

After the close of defendant's case the plaintiff was recalled to the stand as a witness in her own behalf, in rebuttal of Dr. Glazebrook, and upon direct examination as to whether he and Dr. Friedrich went out together, answered:

A. No, sir; they did not go outside of the house. They went into an adjoining room together.

Q. They went into an adjoining room together?

A. Yes, sir.

While plaintiff was under cross-examination the following occurred:

Q. Dr. Friedrich was here this morning when Dr. Glazebrook was testifying, was he not?

A. I didn't see him, Mr. Johnson.

Q. Didn't you see him here in the court room at the time of the recess?

A. My back was to him.

Q. I beg your pardon?

A. I didn't know he was here when Dr. Glazebrook was testifying. My back was to him.

Q. He was here at the recess, and you saw him then, did you not?

A. He was here at five minutes to 1.

Q. At the recess?

A. Yes.

Q. And you saw him in conversation with your counsel and with Dr. Glazebrook, didn't you?

A. No, sir; I did not. I just said "How do you do," to him.

Q. Didn't you see him in conversation with them?

A. No, sir.

Q. You did not see him in conversation with your counsel?

A. No, sir; I did not.

Whereupon the following colloquy took place between court and counsel in the presence of the jury:

Mr. Easby-Smith: I will state, Mr. Johnson, in regard to that question, that I did—

Mr. Johnson (interposing): Never mind.

Mr. Easby-Smith: Do you want me to explain why I did let him go?

Mr. Johnson: I have not asked for any explanation.

Mr. Easby-Smith: Dr. Glazebrook appealed to me to let him go and not call Dr. Friedrich again.

Mr. Johnson: I think, if your Honor please, that justifies a dismissal of this case and withdrawing it from the jury.

The Court: I hardly think it does, Mr. Johnson, but I will tell the jury to disregard this interchange of remarks between counsel.

Mr. Johnson: The whole point of my question is to show that Dr. Friedrich could have been called here to contradict Dr. Glazebrook if there were any occasion for it.

The Court (in the presence of the jury): I will instruct the jury to disregard the remarks that have passed between counsel.

Mr. Johnson: I do not know that it is necessary, your Honor, but simply as a matter of protection to the defendant, I will ask that the jury in this case be discharged from a consideration of it, and I will note an exception to your Honor's ruling.

Mr. Easby-Smith: The only reason I made the statement, your Honor, was because Mr. Johnson referred to counsel in the case. I simply want to state to Mr. Johnson if he—

Mr. Johnson (interposing): We can state that privately. I am not criticizing you in the least, and have not attempted to criticize counsel in the least, except I do criticize the remark made in the presence of the jury.

*Mr. Wm. G. Johnson* for the appellant.

*Mr. James S. Easby-Smith* and *Mr. Ralph B. Fleharty* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

In the absence of any other error we do not think that the judgment should be reversed. It does not appear that there was any substantial conflict in the evidence of the plaintiff and the physician, for he admitted that he had some conversation with her about going to the country; she saying that it was his suggestion and he saying that it was Dr. Friedrich's suggestion which he indorsed. The court promptly told the jury to disregard the occurrence.

Defendant's counsel claimed that this statement of the court was not pointed and positive enough to relieve the impression from the minds of the jury, but the counsel made no request for a more specific instruction. Had the court's attention been called thereto, there is no doubt that he would have made it. Counsel chose, however, to move the discharge of the jury, which the court overruled.

The judgment and discretion of the trial court are to be

relied on on such occasions, and few verdicts would stand if these were made grounds of reversal.

Finding no error the judgment is affirmed with costs.

*Affirmed.*